**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 1:

### Section 1. ~ Defendants.



F I L E D

JUL 3 1 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

1:12 cv 852

| | |
|---|---|
| **Defendant 1:** | Ms Lorraine Lesley Dunabin.<br>1 Chalder Farm Cottages, Chalder Lane,<br>Sidlesham, Chichester, West Sussex.<br>United Kingdom.<br>PO20 7RN.<br>011.44.124.364.1402 |
| **Defendant 2:** | CentralNic Global Headquarters.<br>(As at June 26th, 2012 ICANN list them as TLD Registrar Services Ltd.)<br>35-39 Moorgate,<br>London,<br>United Kingdom.<br>EC2R 6AR.<br>Tel: +44 (0)8700 170 900 |

Notification letter sent to Head Office, in UK ~ ONLY.   Address below, show presence in USA.

CentralNic New York Office ~ Ctc for: sales only.  <> CentralNic USA Ltd.   350 5th Avenue, 59th Floor, New York , NY 10118 USA.
CentralNic California Office ~ Ctct for: sales only  <> CentralNic USA Ltd.   15942 Los Serranos CC Drive, D230, Chino Hills, California 91709 USA

| | |
|---|---|
| **Defendant 3:** | Network Solutions.<br>13861 Sunrise Valley Dr. Suite 300<br>Herndon, VA,<br>USA.<br>20171.<br>1.703.668.4600 |
| **Defendant 4:** | VeriSign Global Registry Services.<br>12061 Bluemont Way<br>Reston, VA<br>USA<br>20190<br>1.703.948.3200 |
| **Defendant 5:** | ICANN ~ Washington, D.C., USA<br>1101 New York Ave, NW, Suite 930<br>Washington, DC<br>USA<br>20005 |

Telephone is % Los Angeles; as no number furnished for address, in Courts Jurisdiction.  1 310 301 5800.

| | |
|---|---|
| **Defendant 6:** | eNom / Bulk Register ~ Demand Media.<br>5808 Lake Washington Blvd, Ste. 300<br>Kirkland, WA<br>98033.<br>USA.<br>1.425.974.4689. |

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 2:

**Subpoena:**    Information is required from WIPO, explaining or showing, the statistical data, which is not available in their online tool.

This question was already posed, see emails enlosed; however, WIPO has not replied, fully.

> **WIPO.**  World Intellectual Property Organization
> Att: Francis Gurry
> 34, chemin des Colombettes
> CH-1211 Geneva 20,
> Switzerland.
> 41 22 733 5428.

Attached with the requested information, I'd like a letter explaining why or how; WIPO have felt it their place to make judgements over goods & services sold from & governed by the United States.

The requirements of ".COM" are dictated by ICANN, are under management of VeriSign; and sold by Network Solutions, all located in the United States, governed by US Law.

Even if, in these particular cases, the ".COM" was sold, hypothetically, by some firm in Finland, or Singapore, the US regulatory (ICANN, VeriSign & Network Solution) laws are applicable.

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 3:

### Section 2. ~ Jurisdiction.

The Eastern District of Alexandria Virginia; has been chosen, for the following reasons.

**Landcruise.com**   Was "Registered" there in 1998, with the dual party Registry & Registrar, of ".COM" with Network Solutions.

In 2006 Landcruise the business began full trading from Virginia, with web-hosting & email, managed by Network Solutions, as such, Landcruise became bona fide, as doing business in Virginia, in a greater capacity than prior.

**Defendant 1:**   Lorraine Dunabin: (Dilution, Infringement, Passing Off)

Of the United Kingdom; however, affected by US Law, under the purchase contract of the domain name, "Landcruise.uk.com" from ENOM, in Washington State.

When conceding to Enom's ~ Terms & Conditions, Lorraine also accepted the Terms & Conditions of CentralNic, by extension.     Both parties are beholden to US Law, as they're selling of the domain name UK.com into the 3rd level and located in the United States.

**Defendant 2:**   CentralNic.com (Contributory Infringers, Dilution & Shaking Down ) owners of the domain name UK.COM, are host to the current contributory infringement, which are registered in the United States, May 1st, 1996 (before ICANN).

Head office in the UK, with two (2) office in the United States and owners of these additional domains .EU.COM ~ .CN.COM ~ .DE.COM ~ .JPN.COM ~ .ZA.COM ~ RU.COM all of which dilute the integrity of ".COM".

All names or words used in association with a ".COM" are regulated here, under VerlSign's management, authorized by ICANN.

**Defendant 3:**   Network Solution (Accommodating Dilution & Contributory Infringement) of Hendron, Virginia, currently Registrar for CentralNic's domain name of uk.com

**Defendant 4:**   VeriSign (Accommodating Dilution & Contributory Infringement.) of Reston, Virginia, **currently** Registry for ".com".

**Defendant 5:**   ICANN (Accommodating Dilution & Contributory Infringement.) of California, with telephone contact and an office in Washington, DC.

**Defendant 6:**     ENOM / Demand Media. (Accommodating Dilution & Contributory Infringement.) who began selling CentralNic in 2004 {Attached}   https://www.centralnic.com/company/news/2004/eNom} are a United States business, located in Washington State and an ICANN accredited registrar service.

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 4:

### Section 3: Allegations.

#### Defendant 1)

Lorraine Dunabin willfully registered Landcruise.uk.com which is "abusive" ~ "infringing" ~ "Look-a-Like" registration, because she, new of my business, having visited prior to purchasing the name "Landcruise" within the domain name of UK.com.

I have AW Stats from Network Solutions, showing visits; and visit information from "Whoson" by Parker Software, a UK based firm.

Created a business which is identical, by name and services offered, which is also confusingly similar, with a website that identifies her enterprise, by brand name of "Landcruise" within the ".COM".

Within her website at Landcruise.uk.com she states ... "The Company' or 'The Company' means Alco Leisure Ltd **trading as LandCruise**, 1 Chalder Farm Cottages, Chalder Lane, Sidlesham, West Sussex, PO20 7RN".

Lorraine desired my domain name, having visited anonymously, before I found Greg Wheelers business IP#, or Andrew Wheeler's, modestly listed IP number; and fell pray to CentralNic's sales pitch, which states ... *"CentralNic's domains provide an alternative to the existing Top Level Domains (TLDs) and Country Code Top Level Domains (ccTLDs), allowing the creation of a simultaneously local and global Internet Identity."*

Having seen my business while researching names; and without question, when having been confronted by ENOM, that the "Landcruise" name was gone, in the ".com" ~ ".net" and ".org" namespace and all channeling to the same destination.

Sadly; for her, CentralNic & ENOM, did not require an affidavit from the primary domain name holder, in the gTLD namespace, in this case Landcruise.com, confirming that we, as a business enterprise wanted to grant a franchise or license to them, or anybody, for a **"*simultaneously local"*** affiliate business ... which, We don't!

A token effort was made, in Enom & CentralNic's purchase forms, requiring the buyer to accept liability for buying a domain name, inside the ".COM" namespace and also that they presumed the buyer to be legit.

As I'll illustrate later, the guilty & hapless fall prey to CentralNic, who's unifying service of domain name, with UK.com occurs "off shore" in Holland, where UK & USA intellectual property laws are not so well respected.     Which for this circumstance is null, as I've studied the system and made the connections, back to the United States, ICANN, Network Solutions & VeriSign.

Lorraine willfully ignored the Terms & Conditions posed by ENOM, *(for / with / under CentralNic)* for Rights to use the name, within the ".COM" namespace and then she secured an IPO.gov.uk Trademark, after launching the "*simultaneously local*" Landcruise inside the ".COM" with ".UK.com" website, again, purchased within the USA & subject to USA Laws,  "Trading as" ~ "Landcruise".

I'm damaged, as owner of Landcruise / Landcruise.com ... Because Lorraine owns the Trademark of "Landcruise" in the United Kingdom, I'm essentially blocked from entry ... returning ... to present my branded business name, in the UK, since discovery.

It could be defended that Lorraine would not object; and let me tour around, marketing my business, there at considerable cost, since the {My} "global" Landcruise would be feeding the undesired ~ "*simultaneously local*" Landcruise with business, since not everybody wants to rent an RV where I'm selling, but might well consider a rental 'at home'.

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 5:

Lorraine Dunabin purchased the "*simultaneously local*" Landcruise.uk.com from a US Based firm, ENOM of Washington State, as the agent for CentralNic; and clients of ENOM, accept by extension of ENOM Terms, that defer to CentralNic.

"1. You acknowledge that the fulfillment by CentralNic of certain domain name services are *subject to oversight by third parties, including, without limitation, the rules, regulations and policies of the Internet Corporation of Assigned Names and Numbers ("ICANN"), the U.S. Department of Commerce, the registry administrators of ccTLD* .LA *and certain contractual agreements between CentralNic and such registry administrators and other technical service providers (collectively, as they may be amended from time to time, the "Third Party Obligations")*. Notwithstanding anything to the contrary herein, CentralNic reserves the right to modify its domain name services in order to comply with any such Third Party Obligations."

Lorraine's actions, relative to ICANN's "Registrant Rights and Responsibilities, under the 2009 Registrar Accreditation Agreement" are somewhat redundant, as ENOM did associate their credibility with ICANN, (presence of ICANN logo & identification to ICANN, as Register, neglecting to clearly state, that CentralNic's 'products' are outside ICANN, by IANA, but inside ICANN, by association of ".COM" ) to this purchase, but because, CentralNic know, knew and developed a system, hosted on servers in Holland, that most of, or many of their clients are suspect and induced into the domain name space by the marketed statement (still use) "CentralNic's domains provide an alternative to the existing Top Level Domains (TLDs) and Country Code Top Level Domains (ccTLDs), allowing the creation of a simultaneously local and global Internet Identity."

Given the prominence of ENOM / Demand Media; and their relationships with & on ICANN's various boards, this firm would have had sufficient knowledge of the domain name industry, to know the dilutive nature of 3rd level ".COM's" and over cocktails at one or more of ICANN's many conferences, been exposed to the casual bantering of clever works, by CentralNic.

This is most probable, as the prominent players at ENOM / Demand Media, CentralNic and Network Solutions have some time ago convened to create "Donuts Inc" and prior to this but shortly after the offending domain name was purchased, CentralNic & Network Solutions joined to form a mutual company , on the right side of the DOT.

In prior communication with Lorraine; I was very accommodating and requested that she graciously yield or hand-back my business name; however this was not done.   {Letters attached.}

While learning the functions of the Internet, I journeyed through Nominet's processes; and when Lorraine was asked if she had ever visited my business prior to securing the domain name of .co.uk ... same testimony furnished would apply to the UK.com   ..... she flat-out lied and said, never visited until I'd contacted her office.

With the digital information provided, I've shown Nominet that she's lied, under the 'oath' of, or too, the British Governments internet management organization, which is Nominet.

Case 1:12-cv-00852-GBL-JFA   Document 1   Filed 07/31/12   Page 6 of 21 PageID# 57

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 6:

### Defendant 2)

CentralNic, are owners of the Contributory Infringing UK.com and also own the "shakedown" domains of EU.com ~ .CN.COM ~ .DE.COM ~ .JPN.COM ~ .ZA.COM ~ RU.COM

CentralNic's California sales office, made a willful obstruction, to steer me away from United States Law's for the recovery of my domain name, to the UDRP, their useless Mediation process, followed by the shakedown team at WIPO, knowing that I was engrossed in getting my domain back, through American Law, since the offending domain name included ".COM" which was prior to a Network Solutions Lawyer teaching me, indirectly, about Contributory Infringement.

A) I'd done the UDRP "Expert" with Nominet; and it was (is) well beyond a flawed system, for .co.uk so flawed in fact, that I recovered my $1,500 for their breaching contract.

B) When asked, would not cooperatively inform me of, or who, the Third Party associates, they had "obligations" too, when requested, so senescing push-back, considered I was being bullied, and unlike most decided to fight back.

C) Engineered a system that incorporates servers in Holland, on the RIPE, to unite the buyers chosen domain name, with their USA based UK.com domain name.

D) CentralNic are the Registered Name Owner of UK.com domain name and also EU.com ~ .CN.COM ~ .DE.COM ~ .JPN.COM ~ .ZA.COM ~ RU.COM

These domain names are governed by the Internet Corporation of Assigned Names and Numbers ("ICANN") and the U.S. Department of Commerce, both have offices in the area, plus the anonymous 3rd Party's …. who I've determined are based in Virginia, being VeriSign "registry" of ".COM" & Network Solutions the registrar, of their domain names, for CentralNic.

Since May 7th, 1999.  CentralNic with either or none of, NEWINCCO 329 LIMITED or NomiNation, a company which was founded in 1995 From the Internet, I've found a myriad companies that were "bit players" in the evolution of this problem, with / as / or part of CentralNic.

In fact, CentralNic are now listed on IANA, under a new company name!

Attached is a document showing CentralNic lobbying ICANN to become a ccNSO > which can also be retrieved on the internet at > http://archive.icann.org/en/dnso/additionalpage.htm

Because CentralNic sell on a 1st come, 1st serve basis names inside / to the left of the ".COM" with no regard or concern to the owners of 1st level gTLD's with ".COM" the obligation {shakedown} is ... Buy it for $ or defend, via their tepid arbitration process, or let WIPO get $1,500.00USD (starter) for a one panelist decision, for something which should be an open & shut case.

Even WIPO have expressed concern over representing CentralNic, see file attached, found at > http://www.wipo.int/amc/en/processes/process2/rfc/rfc3/comments/msg00060.html

As a result of the Landcruise.UK.com purchase, by Lorraine, I was obliged to buy other domain names, inside / left, of the ".COM" at LANDCRUISE.EU.COM ~ LANDCRUISE.CN.COM ~ LANDCRUISE.DE.COM ~ LANDCRUISE.JPN.COM ~ LANDCRUISE.ZA.COM to defend against additional Contributory Infringement, from people / businesses, encroaching on my business.

Here are some of the places where CentralNic, blend (weave) their positions, with ICANN, Network Solutions and VeriSign, as an ICANN appointed Registrar, of ".COM" under VeriSign, and other domains, also as a Network Solutions, Registered Name Holder, of various domain names.

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 7:

**CONFLICTS WITH RAA / Registrar Accreditation Agrements of 2001 and 2009:**

3.7 Business Dealings, Including with Registered Name Holders.

    3.7.2 Registrar shall abide by applicable laws and government regulations.

    **> In this case, the United States at USFDC at Eastern Virginia, in Alexandria.**

    3.7.3 Registrar shall not represent to any actual or potential Registered Name Holder that Registrar enjoys access to a registry for which Registrar is Accredited that is superior to that of any other registrar Accredited for that registry.

    **> CentralNic (as ICANN Registrar {no logo, just word}) pretend to represent their ".COM" domains as fully sanctioned ICANN or IANA domains, as if they were in the Root directory and members of the ccNSO.**

**3.7.7.3 Any Registered Name Holder that intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record and is responsible for providing its own full contact information** and for providing and updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name.

**A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name,** unless it promptly discloses the current contact information provided by the licensee and the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

    **> The domain name of Landcruise.UK.COM is capped of with "Domain ID: CNIC - D0659590 which ~ I guess ~ routes the Whois profile of the 3rd Level / Landcruise, to the 2nd Level, which is UK.com.**

    **> CentralNic do "license" branded names or marks, at the 3rd level, behind their dubious, non-sanctioned ccTLD or ccNSO domains of UK.com ~ EU.com ~ etc.**

    **> CentralNic do manipulate the Whois, by putting Landcruise.UK.com under the "Domain ID:CNIC-DO659590" which could be a re-routing code.   It's certainly a code to join their domain name, with brands, left of the ".COM" or exactly, to the left of the UK.COM.**

    **> Where VeriSign oblige monthly reports, for ICANN review, for domain names, passing through conflict with UDRP, this exercise of a "re routing code" for Domain ID:CNIC-DO659590 ~ may well ~ help Network Solutions give VeriSign false information about the actual events going on within or to the left of, UK.com, EU.com, etc, which are part of these required questions.** http://www.icann.org/en/about/agreements/registries/verisign/appendix-04-01apr10-en.htm

29 ~ transfer-disputed-won ~ number of transfer disputes in which this registrar prevailed

30 ~ transfer-disputed-lost ~ number of transfer disputes this registrar lost

31 ~ transfer-disputed-nodecision ~ number of transfer disputes involving this registrar with a split or no decision

http://www.icann.org/en/about/agreements/registries/verisign/appendix-06-01mar06-en.htm

VeriSign would also know about CentralNic, as it's a two-character domain name; and has special consideration, from legacy registering, prior to VeriSign and; as such maybe a political 'hot potato' for them, whereas it shouldn't be for ICANN.

. **The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 8:

B. Additional Second-Level Reservations. In addition, the following names shall be reserved at the second level:

*All two-character labels shall be initially reserved. The reservation of a two-character label string shall be released to the extent that the Registry Operator reaches agreement with the government and country-code manager,* or the ISO 3166 maintenance agency, whichever appropriate. The Registry Operator may also propose release of these reservations based on its implementation of measures to avoid confusion with the corresponding country codes.

> **In the ISO 3166 list, there is no designation for the United Kingdom, as "UK" they are listed as "GB".** http://www.iso.org/iso/home/standards/country_codes/updates_on_iso_3166.htm?show=tab3 <

> VeriSign, Network Solution & ICANN ... Either as one (1) or as all, should be questioning this two-character label string, with it's motives.

> **CentralNic is NOT a Government organization!**

> **Per >** http://archive.icann.org/en/dnso/additionalpage.htm < **CentralNic's (Mr. Dyer) had a vested interest in NomiNation Ltd as he did with Organic Names.**

> **Why does VeriSign & ICANN regard CentralNic as a "government" when, by their own testimony, they declare "private registry".**

CentralNic as a "Registered Name Owner" are using the domain names to "Contributory Infringe" and are in direct conflict with both ICANN's rules & Network Solutions rules, for Registered Name Owners.

**ICANN <>** 3.7.7.9 The Registered Name Holder shall represent that, to the best of the Registered Name Holder's knowledge and belief, neither the registration of the Registered Name nor the manner in which it is directly or indirectly used infringes the legal rights of any third party.

> **ICANN have never granted CentralNic membership as a ccNSO and CentralNic are well known to ICANN, as a Registrar of 'legal' domain names, in addition to their proclamations of being a "Registry" in their own right.**

> **One can only be a "Registry" if what your selling is 'legal', in the the internet world, in the IANA Root, as a unique domain name ending, and not a domain name, that, for the vast majority of it's life, has been, a simple "domain name" and encroaching other ".COM" brands and obliging them to buy, or become infringed.**

> **A business, such as mine, when obliged to re-purchase my name place, within ".COM" is being shaken-down, with a non-violent extortion practice.**

**Network Solutions <>** 11. REPRESENTATIONS AND WARRANTIES. You agree and warrant that: (i) neither your registration nor use of the any of the Network Solutions services nor the manner in which you intend to use such Network Solutions Services will directly or indirectly infringe the legal rights of a third party, (ii) you have all requisite power and authority to execute this Agreement and to perform your obligations hereunder, (iii) you have selected the necessary security option(s) for your domain name registration record, (iv) you are of legal age to enter into this Agreement (or you are at least 13 years of age and have your parents' permission to apply for services hereunder); and (vi) you agree to comply with all applicable laws and regulations.

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 9:

19. Termination for Unlawful Activity or Third Party Complaints. Network Solutions may terminate your Registration Services at any time for any activity related to the Registered Domain that Network Solutions believes may violate any federal, state, local, European Community, European Community Member State regulation or law or any court order ("Applicable Laws"). Network Solutions has the right to revoke your use of the Registered Domain under the License Agreement at any time if a third party alleges that the Registered Domain or your use of the Registered Domain infringes or violates the rights of any person or entity, or otherwise violates any Applicable Laws (whether or not such allegations are true).

> I've enclosed a document that proves, knowledge, intent and purpose to at 1st perhaps be a "genuine" ccNSO; however, with numerous attempts and no acceptance by ICANN the pursute of clients in the ccTLD / ccNSO name space becomes "contributory infringing" .

> http://archive.icann.org/en/dnso/additionalpage.htm

> See emails sent, to ICANN, VeriSign and Network Solutions, showing document links, that include CentralNic in ccTLD / ccNSO lobbying meetings and other ICANN functions, where the three would have been abundantly aware of CentralNic's motive, intentions and actions.

3.7.7.10 For the adjudication of disputes concerning or arising from use of the Registered Name, the Registered Name Holder shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (1) of the Registered Name Holder's domicile and (2) where Registrar is located.

> This is US Federal District Court, Eastern District at Alexandria.

3.7.7.11 The Registered Name Holder shall agree that its registration of the Registered Name shall be subject to suspension, cancellation, or transfer pursuant to any ICANN adopted specification or policy, or pursuant to any registrar or registry procedure not inconsistent with an ICANN adopted specification or policy, (1) to correct mistakes by Registrar or the Registry Operator in registering the name or (2) for the resolution of disputes concerning the Registered Name.

> Network Solutions & ICANN should have terminated the use of this (these) domain name, years ago.

> Jon Nevitt as Chair, Registrar Constituency ICANN, the Internet Corporation for Assigned Names and Numbers ~ Nonprofit; 51-200 employees; Internet industry ~ June 2006 – May 2009 (3 years)  would have met both Paul Stahura of Enom and Daniel Schindler of CentralNic , plus perhaps the founders of CentralNic; and learned about CentralNic, prior to Network Solutions becoming a sales agent, for CentralNic.

> VeriSign were under siege by CentralNic, when CentralNic made very public efforts to become an ICANN appointed Registry, for domains then in the care of VeriSign.

3.10 Insurance. Registrar shall maintain in force commercial general liability insurance with policy limits of at least US$500,000 covering liabilities arising from Registrar's registrar business during the term of this Agreement.

> CentralNic as a Registrar, in their own right, with ICANN would have this, for the sale of "legal" ICANN sanctioned services, for which the 3rd Level portfolio have no placement, although through the ICANN & CentralNic Registrars, it's generally well imparted as being one & same, equal, included and presented in association with the ICANN Logo.

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 10:

4.2 Topics for New and Revised Specifications and Policies. New and revised specifications and policies may be established on the following topics:

4.2.7 reservation of Registered Names that may not be registered initially or that may not be renewed due to reasons reasonably related to (a) avoidance of confusion among or misleading of users, (b) intellectual property, or (c) the technical management of the DNS or the Internet (e.g., "example.com" and names with single-letter/digit labels);

> ICANN, Network Solutions & VeriSign; either collectively or in individual parts, have the right to close-down, all of CentralNic's domains, on the grounds of use. Proven.

> WIPO have been contacted and I've requested exact statistics from them, regarding CentralNic; however, they're not inclined to kill the "Golden Goose" and easily give-up statistics shown their participation as almost the "strong arm" in a "shake-down" process.
Nothing in this Subsection 4.2 shall limit Registrar's obligations as set forth elsewhere in this Agreement.

5.3 Termination of Agreement by ICANN. This Agreement may be terminated before its expiration by ICANN in any of the following circumstances:

5.3.1 There was a material misrepresentation, material inaccuracy, or materially misleading statement in Registrar's application for accreditation or any material accompanying the application.

> Although ICANN are well aware of CentralNic, their application {and acceptance} would have and does, only entail "legal" IANA Root domains.

They should have their agreement with ICANN to sell 'legal" domains terminated, as they "weave" this authority, into their products, giving themselves / their products, an artificial integrity.

> Everything else done, related to the CentralNic portfolio, is akin to "pinching the mark" in sailing and eludes to clients a sense of legitimacy, while not being.

> With ICANN or VeriSign, there is no Registry Agreement for / with an UK.com Appendix, nor is there a EU.com, Appendix, etc, etc, for CentralNic, because they are frauds, so far as the IANA Root directory is concerned.

IANA's one & only ".COM" representation authority listed, is with / for VeriSign.

5.3.6 Registrar continues acting in a manner that ICANN has reasonably determined endangers the stability **or operational integrity of the Internet** after receiving three (3) days notice of that determination.

> ICANN based on WIPO documents, or feedback, should recognize that such rampant Contributory Infringing, is damaging to the "integrity of the internet".

Unrelated to any of ICANN's various contracts & agreements mentioned, I've found today, per email record, that  ICANN have a data update ... June 26th, 2012.

CentralNic change their listed name to "TLD Registrar Services Ltd." on the ICANN website > http://www.icann.org/registrar-reports/accredited-list.html

Listing themselves with a business name of "TLD Registrar ..."  is further "weaving" or bluring the distinctions between what they "legally" represent, of ICANN and the TLD "Creations" the've diluted & engineered, with the sole purpose of further confusing fact from fact and "Infringing" with greater authority.

Case 1:12-cv-00852-GBL-JFA   Document 1   Filed 07/31/12   Page 11 of 21 PageID# 62

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 11:

### Defendant 3:

Network Solutions.

Network Solutions for ".COM" was both my "Registry" & "Registrar" in 1998 and have always been my "Registrar" for Landcruise / Landcruise.com.

| | |
|---|---|
| 1998 to 2000 | "Registry" & "Registrar". |
| 2000 to 2003 | "Registry" & "Registrar"  ~  Under ownership of VeriSign. |
| 2003 to 2006 | "Registry" & by extension of VeriSign ~ "Registrar". |
| 2006 to 2012 | "Registrar" and "Web hosting." |

Issued our "NIC Handle".

| | | |
|---|---|---|
| Landcruise | = | NIC Handle: LC631-ORG. |
| Me as Contact | = | NIC Handle: 164005I |
| Account: | = | 164002 |

In the section of Allegations, relating to VerISign, I've written all the correlation of legal terms used between the USPTO and Network Solutions, back in 1998.

I've put these facts forward with VeriSign; because, as the current Registry, appointed by ICANN, under / by the US Department of Commerce, the terms are still valid, but now related to VeriSign's obligations to me, as the Registered Name Owner.

Having continuously placed the "registry" purchase, with the same "registrar" of ".COM" either as the direct controlling "registrar" or "registrar" at an "arms length" via ownership of privilege, the "mark" having been in continuos business, just shy of eleven (11) years, ~ uncontested ~ Landcruise qualifies for ... **"Incontestability status"**, given that five (5) years is the minimum test requirement!

Here are some of the places where CentralNic, blend (weave) their positions, with Network Solutions, ICANN, and VeriSign, as Network Solutions, is CentralNic's appointed Registrar, of "UK.com" under VeriSign, and other domains, as listed, also with Network Solutions, for CentralNic as Registered Name Holder.

### CONFLICTS WITH RAA / Registrar Accreditation Agrements of 2001 and 2009:

3.7 Business Dealings, Including with Registered Name Holders.
3.7.2 Registrar shall abide by applicable laws and government regulations.

> **In this case, the United States at USFDC at Eastern Virginia, in Alexandria.**

3.7.3 Registrar shall not represent to any actual or potential Registered Name Holder that Registrar enjoys access to a registry for which Registrar is Accredited that is superior to that of any other registrar Accredited for that registry.

> **Network Solutions, based on their significant history, within the Internet, give credibility to the products they sell.   As such, their selling the "diluted" ~ ".com's" of CentralNic, compelled me to buy many of the outstanding domains, as I've been a client of theirs since the beginning, I felt obliged to purchase the remaining "dilutive" ` .com ~ name spaces, so that no other individuals, such as Lorraine, would create problems for my business.**

> **Now, with a greater understanding of CentralNic; and reading / understanding their Terms and Condition, at a deeper level,  >** https://www.centralnic.com/support/terms/domains/ **"11. Domain names are**

Case 1:12-cv-00852-GBL-JFA   Document 1   Filed 07/31/12   Page 12 of 21 PageID# 63

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 12:

registered on a first come, first served basis." <   it become quite clear that there is a GENTLE **SHAKEDOWN happening; and that I must therefore buy again my business name, with the left side of the .com, or risk dilution and more abusive registrations, of a "Contributive" nature.**
Between the 'legal' Registrar's of domain names and CentralNic, they are playing games with language in section 3.7.3 and with Network Solutions being my "registrar" the inclusion of CentralNic's products at Network Solutions, have a confusing hierarchy.

### SIDE NOTE > RELATIONSHIPS EVOLVED:

Some supplementary notes, that seeded from CentralNic lobbying ICANN, where a VP at Network Solutions, was a prominent player.

### Defendant's 2, 3 created:

Central Registry Solutions.   A business enterprise partnership, between Network Solutions & CentralNic.

**Employees from defendant's 2, 3, 5 & 6 created;**   Donuts Inc:   As the profiles illustrate on the > http:// www.donuts.co/index.php?option=com_content&view=article&id=2&Itemid=6 < these gentlemen have wielded significant power, within the Internet Industry; and some have held not worthy positions, volunteer or paid board is not known, but at ICANN and were exposed to lobbying for ccTLD or ccNSO, from CentralNic.

"Landcruise" was Federally "Registered" with / under ICANN, as Internet manager of "domain names" as the "USPTO" is to Patents & Trademarks, on behalf of the United States Department of Commerce, as a commercial (com) since 1998, with or by Network Solutions, "the dot com people.".…. Registry / Registrar, since 1998.

From original registry date; "Landcruise" as Landcruise.com, has been in bona fide use, reaching into Cyberspace, from the USDoC Municipality, from Alexandria, Va

With additional weighting being placed on the fact that, since September 8th, 2006, Landcruise has been on FTP servers, hosted by Network Solutions, conducting business to the World, via Cyberspace.

Case 1:12-cv-00852-GBL-JFA   Document 1   Filed 07/31/12   Page 13 of 21 PageID# 64

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 13:

**Defendant 4)**

VeriSign Global Registry Services: "Registrar" for ".COM" ~ is a division of the greater VeriSign company offering services beyond just managing the IANA Root directory for ".com" and profiting through technology services & sales.

According to the employee stationed at the VeriSign 'chatroom' VeriSign run the systems, which run the RIPE system, in Holland, therefore, they should be able to gather additional portions of data, as they (domain names) exit the United States, enter Holland and then get dispersed.

Perhaps, they do, I don't know, as otherwise there would be no dubious aspects missing, or be published as "insecure".

VeriSign should, from the information published, by themselves, at http://dnssec-debugger.verisignlabs.com/ landcruise.uk.com be able to confirm a website that's being infringed, on a contributory platform, by reading this file and observing that / question why, critical information is absent, at the 3rd Level.

*<td><img style="width:1em;" src="/red.png" onmouseover="tooltip.show('<p>The parent zone data should include DS records for the child zone.</p> <p>To remedy, the signer of the <u>landcruise.uk.com</u> zone should send the current DS records to the <u>uk.com</u> zone.</p> ')" onmouseout="tooltip.hide()" /></td>*
*<td>No DS records found for landcruise.uk.com in the uk.com zone</td>*

*<td><img style="width:1em;" src="/red.png" onmouseover="tooltip.show('<p>Did not find any DNSKEY records for <u>landcruise.uk.com</u>.</p> <p>Either the <u>landcruise.uk.com</u> zone is not signed with DNSSEC, or the zone maintainer neglected to include the DNSKEY records before signing it.</p> )" onmouseout="tooltip.hide()" /></td>*
*<td>No DNSKEY records found</td>*

*<td><img style="width:1em;" src="/red.png" onmouseover="tooltip.show('<p>Most likely, the <u>landcruise.uk.com</u> zone is not signed with DNSSEC.</p> <p>If it is signed, then some RRSIG records are missing or not available from all nameservers.</p> ')" onmouseout="tooltip.hide()" /></td>*
*<td>No RRSIGs found</td>*

Additional proof that there are issues with the 3rd Level, are published at the VeriSign link, "Want a second opinion?   Test landcruise.uk.com at dnsviz.net." http://dnsviz.net/d/landcruise.uk.com/dnssec/ where this information is published

- Delegation status
- Secure (3)
- . to com
- com to uk.com
- dlv.isc.org to uk.com
- Insecure (1)
- uk.com to landcruise.uk.com

Where notification exists of something "insecure" that should alert VeriSign, ICANN & Network Solutions to a problem, related to integrity, at various levels.

VeriSign; currently appointed "Registry" by ICANN, under USDoC, would have in it's possession carry over information that was issued by Network Solutions, in 1998, where the language & actions of the Where USPTO language is used, representing the services purchased, there is an imparted equal degree of validity & recognition, by / from the United State Department of Commerce.

I've read that after a domain name expires from a Registered Name Owner, the data is maintained for three (3) years, by the Registrar, so the Registry, now VeriSign, would have access to this data also, for reporting to ICANN.

Per USTO Glossary of Terms. Network Solutions furnished a "Certificate of registration" {RegistrationPlus} "Certification of Mark" {Landcruise.com} incorporating the "Landcruise" and ".com" into the new business trading environment, find enclosed.

Case 1:12-cv-00852-GBL-JFA   Document 1   Filed 07/31/12   Page 14 of 21 PageID# 65

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 14:

Also furnished was an equivalent *"Publication number"*, called a "*NIC Handle*", for both Landcruise as *LC631-ORG* & myself, as manager for the mark, as *164005I*.

With the application of such official language; and operating at the pleasure of the US Congress & Department of Commerce, consumers, either businesses or personal, expectations are that, Network Solutions & newly minted, ICANN, currently VeriSign, would maintain equal practice to USPTO, given identical practice, of securing names for use in commerce, in 1998 and currently.

Landcruise.com / Landcruise Ltd; being so old, enjoys "State Law" ~ "Rights" in Virginia, plus or with Common Law, then, a bit of Lanham Act; and now via Anti-Cybersquatting Piracy Act (ACPA) Lanham Act S. 43(d) more detailed rights & privileges.

My USPTO # for Landcruise is 85348243 and upon completion, will cross reference "Whois" start date, in 1998.     (The USPTO is ready; and they are waiting for the slow, Canadian Government.)     The classification is "Motorhome Rentals" and the United States & United Kingdom have some reciprocal agreements, protecting IP.

While "Famous Brands" are hard to establish or prove; **"Incontestable"** seems to be more openly embraced.   Since "incontestable" requires only five (5) years, of uninterrupted or contested use, my firm, Landcruise / Landcruise.com is very nearly six (6) years older than the established age required, at eleven (11) years, functioning online into the Global Marketplace.

11 Years to date of Abusive Registration & Contributory Infringement.  As at the date of this submission to the US Federal District Court, my business will be in it's fourteenth (14th) year of continuous activity.

Short of doing the paperwork, or herein, "Landcruise" or "Landcruise.com" is fully qualified as "Incontestable" and such "rights" should be extended to all facets of the Internet, {Worldwide.} which are effected, influenced, or controlled, by the United States Congress, through ICANN, which WILL include the restriction of use, of the word "Landcruise" in any Country (genuine ccNSO ~ ccTLD) and also exclude the word from use, in the new TLD's on the Right side, of the dot, except by me.

### ICANN TO VERISIGN:

http://www.icann.org/en/about/agreements/registries/verisign/registry-agmt-com-22sep10-en.htm

ARTICLE III   Covenants

Section 3.1 Covenants of Registry Operator.   Registry Operator covenants and agrees with ICANN as follows:

(a)      *Preserve Security* and Stability.
(b)      Consensus Policies.

(iv) ......  Consensus Policies shall relate to one or more of the following: (1) issues for which uniform or coordinated resolution is reasonably necessary to facilitate interoperability, *Security* and/or Stability of the Internet or DNS;   ....... (4) registry policies reasonably necessary to implement Consensus Policies relating to registry operations *{The systems ?}* or registrars; *{CentralNic, Network Solutions, Enom}* or *(5) resolution of disputes regarding the registration of domain names* (as opposed to the use of such domain names).

     **> CentralNic did not; and does not, have my authority to use, permit the use, or associate the use of the protected word "Landcruise" in association with the domain name UK.com or in any way inside, or to the left of the ".COM"**

The United States District Court, Eastern District of Virginia, Alexandria Division.

## PAGE # 15:

> **Lorraine Dunabin does not have my authority to use ~ register ~ "Landcruise" in association with a ".COM" or any other domain name, managed or governed by ICANN, or IANA, including the restriction of use, the ".CO.UK" name-space.**

> **VeriSign's knowing of CentralNic, represents a willful participation in "dilution" and because in party with ICANN's rules, and Network Solutions rules, pertaining to the uses of a ".COM" domain name, the UK.com and the others mentioned, should have been revoked, long ago.**

(C)          reservation of registered names in the TLD that may not be registered initially *or that may not be renewed due to reasons reasonably related to (a) avoidance of confusion among or misleading of users, (b) intellectual property,* or …………

(F)                    resolution of disputes regarding whether particular parties may register or maintain registration of particular domain names.

> **The Registration or most critically, the renewal of the UK.com; and the others identified, as held by Registered Name Owner, CentralNic should have been dealt with at the ICANN / Network Solutions level and VeriSign, having it's personnel sit-on or chair various ICANN committees, would have been educated to the problems caused, by the dilution of the ".com" name space.**

> **Additional to this, VerISigns own DNS Debugger system, as mentioned, should have set off alarm bells, for created, existing or continued problems, with the "stability" of the ".COM" name space.**

(c)          Handling of Registry Data.

Registry Data, as used in this Agreement, shall mean the following: (1) data for domains sponsored by all registrars, consisting of domain name, server name for each nameserver, registrar id, updated date, creation date, expiration date, status information, and DNSSEC delegation signer ("DS") data (if Registry Operator implements DNSSEC); (2) data for nameservers sponsored by all registrars consisting of server name, each IP address, registrar id, updated date, creation date, expiration date, and status information; ....

> **DNSSEC-debugger highlighted problems, as did the alternative tool and the placement of the Domain ID:CNIC-DO659590 jumbled up all the information, to make two versions of Whois. One with the UK.com and the other, the Landcruise.UK.com.**

(f)          Traffic Data. ………. Nothing in this Agreement shall preclude Registry Operator from making commercial use of, or collecting, traffic data regarding domain names or non-existent domain names for purposes such as, without limitation, the determination of the availability and *health of the Internet, pinpointing specific points of* failure, characterizing attacks and misconfigurations, identifying compromised networks and hosts, and promoting the sale of domain names; ……..

(g)          Security and Stability Review. Twice annually Registry Operator shall engage in discussions with executive staff of ICANN and the Chairman of the Board of ICANN on trends impacting the Security and/ or Stability of the Registry, the DNS or the Internet pursuant to the terms of confidentiality agreements executed both by the executive staff of ICANN and the Chairman of the Board.

> **At these meetings with ICANN, the dilution of the ".COM" name space should have been addressed!   Not just by VeriSign, but also by Network Solutions, prior to VeriSign's reign.**

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 16:

(b)          Equitable Treatment.  ICANN shall not apply standards, policies, procedures or practices arbitrarily, unjustifiably, or inequitably and shall not single out Registry Operator for disparate treatment unless justified by substantial and reasonable cause.

> CentralNic as "Registered Name Holder" should have been investigated under or within Network Solutions, as their Registrar, for UK.com, EU.com, and the others.

> CentralNic's activities with UK.com, EU.com, etc, since at least 1999, per my found document, should have given ICANN, justified, substantial & reasonable cause, not to permit them to be an ICANN Registrar business, to prospective Registered Name Owners, because of the potential likelihood that they would create 'smoke & mirrors' and make subtle associations between their portfolio and "legal" ICANN / IANA listed domains, of which ... stated yet again, the CentralNic product has never been included.

(e)          Root-zone Information Publication.  ICANN's publication of root-zone contact information for the Registry TLD will include Registry Operator and its administrative and technical contacts. Any request to modify the contact information for the Registry Operator must be made in the format specified from time to time by ICANN.

> ICANN & VeriSign should have noticed that CentralNic were / are diluting and infringing the value or their own resource.

> WIPO; tepid as they are, have made utterances about Cybersquatting and the artificial manifestation of ccTLD's in functioning as an ccNSO, while 100% unsanctioned, should have had ICANN & VeriSign thinking that they themselves were / are in effect being Cybersquatted or diluted.

ARTICLE VIII   Miscellaneous

Section 8.3        Assignment and Subcontracting.  Any assignment of this Agreement shall be effective only upon written agreement by the assignee with the other party to assume the assigning party's obligations under this Agreement. Moreover, neither party may assign this Agreement without the prior written approval of the other party. Notwithstanding the foregoing, ICANN may assign this Agreement (i) in conjunction with a reorganization or re-incorporation of ICANN, to another nonprofit corporation organized for the same or substantially the same purposes, or (ii) as may be required pursuant to the terms of that certain Memorandum of Understanding between ICANN and the U.S. Department of Commerce, as the same may be amended from time to time.   Registry Operator must provide notice to ICANN of any subcontracting arrangements, and any agreement to subcontract portions of the operations of the TLD must mandate compliance with all covenants, obligations and agreements by Registry Operator hereunder. Any subcontracting of technical operations shall provide that the subcontracted entity become party to the data escrow agreement mandated by Section 3.1(c)(i) hereof.

> Is there an Assignment and Subcontracting, agreement between Verisign and CentralNic, that allows the dilution of the ".COM" name space, at a distance from the "legal" ccTLD, gTLD and ccNSO domains?

Section 8.5         No Third-Party Beneficiaries.  This Agreement shall not be construed to create any obligation by either ICANN or Registry Operator to any non-party to this Agreement, including any registrar or registered name holder.

> Is CentralNic a non 3rd Party, but huge beneficiary of the ".COM" name space, at the 2nd level, by creating an infrastructure in Holland, for Contributory Infringement, at the 3rd Level?.

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 17:

> CentralNic openly & actively marketing the .COM, from the 2nd level, into the 3rd Level and this would constitute a "Third Party Beneficiary" because, in CentralNic's own words, ....

"CentralNic's domains provide an alternative to the existing Top Level Domains (TLDs) and Country Code Top Level Domains (ccTLDs), allowing the creation of a simultaneously local and global internet identity."

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 18:

**Defendant 5:**      ICANN

My observation(s) of ICANN are extracted or connected with / to, questions posed above, to CentralNic, Network Solutions and VeriSign, which all over-lap, to become one body of rules, for the ...

Registered Name Holder.
Registrars.
Registries, to abide by.

ICANN have been contacted on numerous occasions; and for all intents and purposes, never reply.

Generic, form letters, don't qualifies as replies, as I've sent direct inquiries, to individual employees, at ICANN, none of whom speak up and explain the relationship to CentralNic, or why they consistently turn a 'blind eye' on the problems generated.

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 19:

**Defendant 6)**   ENOM / Demand Media.

Based on the prominence of the ENOM Founder, this firm would have "known" that the domain names they're undertaking to sell, in 2004, on behalf of CentralNic, were not authorized as ICANN / IANA approved ccTLD or ccNSO domain names.

I'd suspect that part of the sales pitch, from CentralNic, would be that the various 'products' they sell are held offshore in Holland.

Personally, I think it's a very clever and well engineered process, if it were my system, I'd defiantly impart that aspect, of the system, and skate-around the contractual obligations of the Registered Name Owner, to which this system is accountable.

Currently as at today; they continue to sell CentralNic; however they do now know, more intimately, of the problems, created perhaps from UDRP & **WIPO experiences / feedback and have a specific page that basically explains that the domains are

" http://www.enomcentral.com/help/faq-tlds.aspx   *Second-Level Domains ~ Second-Level Domains (ccSLDs) are the combination of a global extension and the country you're from. Choose one of these extensions to signify your country while promoting your global presence. Good examples are China (.CN.COM) and Germany (.DE.COM)."*   they they're discharging themselves from the Terms & Conditions of CentralNic >

*If you've been wanting to register "whatever.com" and it hasn't been available, you might just be able to get "whatever.us.com" in its place. These unrestricted domain names are now widely available on a first come first serve basis.*
*eNom, one of the largest ICANN Accredited Domain Name Registrars, has introduced a series of two-letter, geo-specific, domain names. These domain names, made possible by CentralNic , a private London Based domain name registry, include US.COM, EU.COM, UK.COM, CN.COM, RU.COM, DE.COM & twelve others that represent the worlds most populated countries.*

*Matt Stearn, VP, eNom Inc. & Joe Alagna, GM, North America, CentralNic, Ltd*
*"Our names open up the entire domain space again and work within the existing Internet infrastructure." said Joe Alagna, CentralNic's North American Manager. "There are tens of thousands of people in all of these countries who would love to be able to get a more descriptive domain name that ends in dot com, but can't because all the good dot com domains are taken. We not only give them a dot com domain, but we also give them a domain that relates to their specific country or region. People like that."*
*Matt Stearn, Vice President at eNom stated, "The domains are doing much better than projected. Considering the ease of implementation, high margins, CentralNic's rock-solid reputation, and long track record of success; adding their domains to our mix was a good business decision."*

*WIPO:*

*** WIPO have been approached, for statistical data; and they are silent.**

*I've attached my communications to them, which are as yet, not addressed.*

*To resolve this problem, I'm going to send them a "registered letter" explaining again, that their data is required, as it's required as evidence for my problem, here; and review by the US FDC and also will be sent to Senator Leahy, because I think that a large part of the Intellectual Property problems stem from ICANN's not guarding domestic domains.*

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 20:

### Section 4 ~ Relief:

Because I'm a one-man Pro Se; and fighting to resolve a problem that's affected far more people & businesses than I, I'm intent on having most "relief" benefit Rotary, as if mine, this case, was a Class Action Suit.

**Defendant 1)**  Maximum allowable financial penalty, including turnover of the domain name, Landcruise.co.uk and the release & turn over of the UK Trademark, for the name Landcruise, to me, secured after visits to my business and given that:

> Lorraine Dunabin was asked nicely to relinquish the use of my business name, at the very beginning, of our conversations. {See proof furnished.}

> Lied to UDRP "Expert" about having never seen our business, until contacted by Nominet.

> Secured an IPO.gov.uk Trademark, for my business name, effectively barring Landcruise.com / Landcruise from entry into the 'humanly physical' marketplace of the UK, where since 1999 until the cusp of the crash, in 2006, I visited, marketing to our primary invested / target market prospects.

**Defendant 2)**  CentralNic.

Maximum allowable, given above shown intent.   75% payable to my Rotary Club, for the Youth, Vocation & Scholarships and 25% for my time & effort researching the system they've engineered.

Additionally; I'd like to have the Courts transfer & assign ownership of all the subject domains to Rotary.

The sub-domains would be offered as a fundraiser, to the genuine "whois" owners of the ".COM" ... only ... as a classification of ~ American International ~ as the ".COM" is simultaneously this.

Under Rotary management, this would completely alleviate all the problems, previously created.

Management of this would be assigned to the University of Waterloo, in Ontario, Canada an institution recognized for their Information Technologies, by major US Firms; and in Canada, we have similar Laws & Policies, to the United States, along with an impeccable trading relationship.

**Defendant 3)**  Network Solutions.

To be determined by the Court & made payable to my Rotary Club, for the Youth, Vocation & Scholarships.   Must release the conflicted domain names over to another party, perhaps Rotary, for the purposes mentioned.

**Defendant 4)**  VeriSign.

To be determined by the Court & made payable to my Rotary Club, for the Youth, Vocation & Scholarships.   Must release the conflicted domain names over to another party, perhaps Rotary, for the purposes mentioned.

**Defendant 5)**  ICANN.
To be determined by the Court & made payable to my Rotary Club, for the Youth, Vocation & Scholarships.   Must release the conflicted domain names over to another party, perhaps Rotary, for the purposes mentioned.

**Defendant 6)**  ENOM / Demand Media.   To be determined by the Court & made payable to my Rotary Club, for the Youth, Vocation & Scholarships.

**The United States District Court, Eastern District of Virginia, Alexandria Division.**

## PAGE # 21:

**OTHER BUSINESS:**

As this document, *evidence, to be sent to Defendant #1, but not included here,* presents ample research and information for me to recover ownership of "Landcruise" at / in / from the UK.COM from Lorraine Dunabin, it also furnishes the information that Lorraine could use, in the same Court, to recover damages from CentralNic, as she was essentially sold a dubious product, that "hung her out to dry".

**I don't want Lorraine to benefit from my research and aggravation!**

Should Lorraine file a claim against CentralNic, in this Court, I'd request that 100% of > any < settlement, be given to the Rotary Club, in England, where my Uncle was an active member.

At the appropriate time & place; I'll furnish the Court with the contact of this Rotary Club, for the same purposes as my "relief" ... to fund Youth & Vocation projects.