IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

GRAHAM SCHREIBER,          )
                                 )
     Plaintiff,            )
                                 )     CASE NO. 1:12-cv-852 (GBL-JFA)
     v.                  )
                                 )
LORRAINE LESLEY DUNABIN, *et al.*,  )
                                 )
     Defendants.       )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motions to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim. (Dkt. Nos. 6, 8, 17, 46, 57.) This case concerns Plaintiff's claim that Defendants are infringing his Canadian trademark *Landcruise, Ltd.* ("*Landcruise*") used in connection with Plaintiff's motor home rental business. Defendants' Motions present three issues before the Court.

The first issue is whether the Court has subject matter jurisdiction over Plaintiff's claims of trademark infringement against Defendant Dunabin when the alleged infringing acts occurred outside of the United States and concern marks that have not been used or registered in the United States. The Court grants Defendants' Motions to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction against Defendant Dunabin because the Lanham Act cannot be applied extraterritorially in this case.

The second issue is whether Plaintiff fails to state a claim for direct trademark infringement and contributory trademark infringement when Plaintiff does not assert (1) trademark rights in the United States, and (2) effect on United States commerce. The Court grants Defendants' Motions to Dismiss Plaintiff's Complaint for failure to state a claim as to all

1

Defendants because Plaintiff fails to plead facts that plausibly establish he has recognized trademark rights in the United States that can be infringed, either directly or contributorily. Further, the Court finds the Lanham Act's Safe Harbor Provision protects Defendant Registrars from liability.

The third issue is whether the Court should exercise supplemental jurisdiction over Plaintiff's remaining state law claims where all the federal law claims have been dismissed and where the parties would not be burdened if jurisdiction is not retained. The Court declines to exercise supplemental jurisdiction because (1) the Court has dismissed all of Plaintiff's claims arising under the Lanham Act, and (2) the Court finds no persuasive reason to retain Plaintiff's state law claims. For these reasons, Plaintiff's Complaint is dismissed with prejudice as to all Defendants.

## I.    BACKGROUND

This case concerns Plaintiff Graham Schreiber's claim that Defendants are infringing his Canadian trademark *Landcruise.* Plaintiff is a Canadian citizen and owner of Landcruise, a Canadian-based corporation that rents motor homes in Canada. (Pl.'s Ex. at 6, Dkt. No. 47.) Plaintiff has operated his business for the past fourteen years and has filed a pending trademark application for the *Landcruise* mark with the United States Patent and Trademark Office. (Compl. at 14.)

Plaintiff brings this action against Defendant Lorraine Dunabin ("Dunabin") alleging that her company is infringing on his trademark. Defendant Dunabin is a resident and citizen of the United Kingdom and owner of Alco Leisure Ltd. ("Alco"). (*Id.* at 4.) Dunabin uses the *Landcruise* mark in connection with her motor home rental business in the United Kingdom. Dunabin registered the domain name *Landcruise.uk.com* through the domain name registrar

eNOM. (Compl. at 5.) Plaintiff asserts he has been harmed by Dunabin because she owns the trademark *Landcruise* in the United Kingdom, and consequently he is "blocked" from using his Canadian trademark in the United Kingdom. (*Id.*)

Plaintiff brings this action against five additional defendants: CentralNic, Network Solutions, VeriSign, ICANN, and eNom, all of whom have some role in the registration or maintenance of the *Landcruise.uk.com* domain name. Plaintiff alleges that these defendants are contributorily liable for trademark infringement by registering and maintaining the *Landcruise.uk.com* domain name owned by Dunabin.

Defendant CentralNic is an accredited ICANN domain name registrar and acts as a domain name registry operator of third-level domains, such as domains that end in "uk.com." (Def. CentralNic Br. at 5-6, Dkt. No. 9.) A domain name registrar is an organization or commercial entity that manages the reservation of Internet domain names. (*Id.* at 6.) A domain name registry is a database of all the domain names registered in a top-level domain. (*Id.*) The domain registrar is the service that takes a consumer's registration information and reserves the domain from the main registry. (*Id.*) The registrar will then submit the technical information to the registry operator. (*Id.*) The registry operator maintains the database and provides the technical information to locate the domain name and accompanying website. (*Id.*) In connection with the domains offered under the second-level domain "uk.com," CentralNic acts as the registry operator and contracts with other accredited registrars to distribute and offer the domain names to the consuming public. (*Id.*)

Like CentralNic, Defendant Network Solutions is an accredited domain name registrar. (Def. Network Solutions's Br. at 5, Dkt. No. 7.) Since 1993, Network Solutions has registered over three million domain names. (*Id.*) In 1998, Plaintiff registered the domain name

*Landcruise.com* using Network Solutions as the domain name registrar. (Compl. at 13; *see also* Def. Network Solutions's Br. at 4.) Plaintiff claims that Landcruise.com has been conducting business on the Internet since 2006 with its webhosting and email service managed by Network Solutions. (Compl. at 4, 12; *see also* Def. Network Solutions's Br. at 5.)

Defendant VeriSign, Inc. (named in the Complaint as VeriSign Global Registry Services) ("VeriSign") operates the registry for the top-level domain ".com." (Def. VeriSign's Br. at 5, Dkt. No. 59.) Plaintiff contends VeriSign is liable for "[a]ccomodating Dilution & Contributory Infringement" for the ".com" Registry. (Compl. at 3-4.)

Defendant ICANN is a California not-for-profit public benefit corporation. (Def. ICANN's Br. at 2, Dkt. No. 18.) ICANN does not engage in commercial business but rather administers the Internet's Domain Name System ("DNS") on behalf of the Internet community pursuant to a series of agreements with the United States Department of Commerce. (*Id.*) The Internet DNS translates unique sets of numbers that computers associate with websites into commonly known domain names, allowing users to easily find specific locations on the Internet. (*Id.*) ICANN enters into contracts, referred to as "Registry Agreements," with each "Registry Operator," a company that manages the Internet's generic top-level domains ("gTLDs"), such as ".com," ".net," and ".org." (*Id.* at 3.) Additionally, ICANN accredits and monitors the companies that act as "Registrars." As part of this accreditation process, ICANN enters into a standard Registrar Accreditation Agreement ("RAA") with each Registrar. (*Id.*) Pursuant to its mission, ICANN entered into a Registry Agreement with Defendant VeriSign, a company that operates the ".com" gTLD. (*Id.*) ICANN also entered into a standard RAA with Defendant Network Solutions, a gTLD domain name registrar. (*Id.*)

Defendant eNom is an ICANN accredited registrar. (Def. eNOM's Br. at 4, Dkt. No. 46.) Plaintiff alleges that eNom sold the domain name *Landcruise.uk.com* to Dunabin. (*Id.*; *see also* Compl. at 3). Plaintiff brings this claim against eNom under contributory infringement, stating, "eNom knew then, very clearly, the precious distinctions between 'TLD's' and 'Domain Names' and they were selling 'infringement' naturally equaling 'Contributory Infringement.'" (Pl.'s Opp'n Br. at 5, 26, 32; Dkt. No. 55.)

On July 31, 2012, Plaintiff, proceeding *pro se*, filed his Complaint in this Court. Plaintiff alleges federal trademark infringement under the Lanham Act and trademark infringement and dilution under Virginia law. (Compl. at 3.) Specifically, Plaintiff alleges direct infringement by Dunabin and contributory infringement as to all other Defendants. Before the Court are Defendants' Motions to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (*See* Dkt. Nos. 6, 8, 17, 46, 57.) Also before the Court is Plaintiff's Motion for Summary Judgment. (Dkt. No. 72.)

## II.    STANDARD OF REVIEW

These Motions are brought under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim. In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995). A defendant bringing a 12(b)(1) motion may contend that the complaint simply "fails to allege facts upon which subject matter jurisdiction is based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In that case, "all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6)

consideration." *Id.* Thus, the standard to determine a motion to dismiss pursuant to Federal Rule 12(b)(1) and 12(b)(6) is the same.

A motion to dismiss under 12(b)(6) should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (internal citations omitted); *see* Fed. R. Civ. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A complaint is also insufficient if it relies upon "naked assertions devoid of further enhancement." *Iqbal*, 556 U.S. at 678.

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Twombly*, 550 U.S. at 556 n.3.

In cases with *pro se* litigants, district courts are to "construe *pro se* complaints liberally." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  To that end, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations and citations omitted).  However, principles requiring generous construction of *pro se* complaints are not without limits.  *Beaudett*, 775 F.2d at 1278.  Courts are not required "to conjure up questions never squarely presented to them."  *Id.*  Even in the case of *pro se* litigants, courts "cannot be expected to construct full blown claims from sentence fragments."  *Id.*  "[C]ourts recognize that a plaintiff can plead himself out of court by pleading facts that show that he has no legal claim." *Whitlock v. Street*, No. 3:12cv95HEH, 2012 WL 3686434, at *4 (E.D. Va. Aug. 24, 2012) (internal quotation marks omitted).

## III.   DISCUSSION

The Court grants Defendants' Motions to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction against Dunabin because Dunabin's alleged infringing acts occurred outside of the United States and concern marks that have not been used or registered in the United States.  (Dkt. Nos. 6, 8, 17, 46, 57.)  Thus, the Lanham Act cannot be applied extraterritorially in this case.  Additionally, the Court grants Defendants' Motions to Dismiss Plaintiff's Complaint for failure to state a claim because Plaintiff fails to plead facts that plausibly establish he has recognized trademark rights in the United States that can be infringed, either directly or contributorily.  (Dkt. Nos. 6, 8, 17, 46, 57.)  Lastly, because the Court has

dismissed all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### 1.      Subject Matter Jurisdiction.

The Court lacks subject matter jurisdiction over Plaintiff's underlying claim against Dunbain because Dunabin's alleged infringing acts occur outside of the United States and do not have any effect on United States commerce.  Plaintiff's entire Complaint is based on Dunabin's use of *Landcruise* in the United Kingdom and her registration of *Landcruise.uk.com* as a domain name.  (Compl. at 4.)  Plaintiff alleges he is harmed because he is barred from using *Landcruise* in the United Kingdom and from registering *Landcruise* in the "uk.com" second-level domain space.  (*Id.*)  Plaintiff's claims of trademark infringement (15 U.S.C. § 1125(a)) and dilution (15 U.S.C. § 1125(c)) fall under the Lanham Act (15 U.S.C. § 1051), which provides the basis for federal subject matter jurisdiction.  *See* 18 U.S.C. § 1331 (2012).

Section 32(1) of the Lanham Act provides, in pertinent part:

> Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the . . . advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such . . . to be used in commerce upon or in connection with the . . . advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant . . . .

15 U.S.C. § 1114(1) (2012).  Thus, the Lanham Act requires a plaintiff alleging a cause of action for trademark infringement to prove that (1) it possesses a valid, protectable trademark; (2) defendant used the mark; (3) defendant's use of the mark occurred in commerce; (4) defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods

or services; and (5) defendant used the mark in a manner likely to confuse consumers as to the source or origin of goods or services. *See* 15 U.S.C. §§ 1114(1), 1125(a); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001).  The Lanham Act defines commerce as "all commerce which may lawfully be regulated by Congress."  15 U.S.C. § 1127 (2012).  The Lanham Act's express reach to the limits of Congress's power in regulating commerce is construed to support any conduct which has a significant effect on United States Commerce.  *Nintendo of Am., Inc. v. Aeropower Co., Ltd.*, 34 F.3d 246, 249-50 n.5 (4th Cir. 1994) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286-87 (1952)).

Before applying the Lanham Act to issue an injunction extraterritorially against Dunabin's alleged infringing acts in the United Kingdom, the Court must balance the three factors arising from *Bulova*.  344 U.S. at 286-90.  In determining whether the contacts and interests of the United States were sufficient to support the exercise of extraterritorial jurisdiction, the Court looks to whether: (1) the defendant's conduct has a significant effect on United States commerce; (2) the defendant is a citizen of the United States; and (3) issuance of an injunction would interfere with trademark rights under the relevant foreign law, making issuance of the injunction inappropriate in light of international comity concerns.  *Id*.  As the Fifth Circuit elaborated, "The absence of any one of these is not dispositive," and a court should not "limit its inquiry exclusively to these considerations."  *Am. Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408, 414 (5th Cir. 1983).  Rather, these factors should be used as the "primary elements in any balancing analysis."  *Id.*

The first *Bulova* factor considers whether the defendant's conduct has a significant effect on United States commerce.  *See Bulova*, 344 U.S. at 283.  In *Nintendo*, the Fourth Circuit affirmed the district court's finding that the defendants' infringing acts in Mexico and Canada

had a significant impact on United States commerce. *Nintendo*, 34 F.3d at 251. In that case, the defendants imported and sold infringing video game cartridges in the United States, and also exported infringing cartridges to Canada and Mexico with the knowledge that they would ultimately enter the United States. *Id.* at 248. Although the Fourth Circuit agreed with the district court's finding that the defendants' conduct had a significant impact on United States commerce, it vacated the district court's order applying the Lanham Act extraterritorially because it failed to consider the remaining two Bulova factors, namely the defendants' citizenship and the possibility of conflict with foreign law. *Id.* at 251.

Here, there is no allegation that any of Dunabin's conduct has *any* effect on United States commerce, let alone a significant effect. Unlike the defendants in *Nintendo* who sold infringing cartridges in the United States and exported infringing cartridges to Mexico and Canada knowing the products would enter the United States, Dunabin's use of the *Landcruise* mark occurs solely in the United Kingdom. *See id.* at 248. Dunabin has not sold or even advertised her services in the United States. Further, Plaintiff fails to allege that Dunabin intends or has knowledge that her products will reach the United States market. Accordingly, Dunabin's use of her *Landcruise* trademark in the United Kingdom does not have a significant effect on United States commerce.

The second *Bulova* factor considers whether the defendant is a United States citizen. *See Bulova*, 344 U.S. at 285-86. Citizenship of the defendant is a critical factor in determining whether to extend the Lanham Act extraterritorially because "application of United States law to United States nationals abroad ordinarily raises considerably less serious questions of international comity than does the application of United States law to foreign nationals abroad." *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 274 (1991). In *Bulova*, the Supreme Court explained: "[T]he United States is not debarred by any rule of international law from governing

10

the conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations or their nationals are not infringed." *Bulova*, 344 U.S. at 285-86. But where the alleged infringing foreign acts involve a non-U.S. citizen, "courts have been reluctant to extend the reach of the Lanham Act." *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 955 F. Supp. 220, 226-27 (S.D.N.Y. 1997) (refusing to apply Lanham Act extraterritorially to a Canadian company where its sales overseas had no substantial effect on United States commerce); *see also Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 643 (2d Cir. 1956) (refusing to apply Lanham Act extraterritorially to Canadian citizen where there was no confusion among United States consumers and thus no substantial effect on United States commerce).

Here, Dunabin is a citizen of the United Kingdom. Moreover, Plaintiff is a citizen of Canada and does not allege to have any sales in the United States. Consequently, no citizen of the United States is being harmed because neither Plaintiff nor Dunabin are using the *Landcruise* mark in the United States. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 310-11 (4th Cir. 2012) ("[T]he archetypal injury contemplated by the [Lanham] Act is harm to the plaintiff's trade reputation in United States markets" and "there is no United States interest in protecting [foreign] consumers.") (internal quotations omitted). Because the goal of the Lanham Act is the protection of American consumers against confusion and Dunabin's alleged infringing acts do not affect United States commerce, the Lanham Act cannot be applied extraterritorially.

Lastly, the third *Bulova* factor considers whether issuance of injunction would interfere with trademark rights under the relevant foreign law, making such issuance inappropriate in light of international comity concerns. *See Bulova*, 344 U.S. at 285-86. As the Second Circuit explained, courts should avoid extending the Lanham Act extraterritorially when "the exercise of

11

such power is fraught with possibilities of discord and conflict with the authorities of another country." *Vanity Fair Mills*, 234 F.2d at 647l; *see also Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l, Inc.*, 252 F.3d 1274, 1279 (11th Cir. 2001) (holding that the application of the Lanham Act extraterritorially was inappropriate for acts occurring mainly overseas because a "ruling by a United States court on allegations of unfair competition . . . might interfere with an inconsistent ruling" from the foreign jurisdiction's courts).

Here, Dunabin is a citizen of the United Kingdom, and she obtained the *Landcruise* trademark in the United Kingdom.  If the Court were to grant Plaintiff's Complaint for an injunction, the order would interfere with the United Kingdom's ability to enforce its own trademark laws.  Accordingly, an injunction against Dunabin must be denied.

In weighing all three *Bulova* factors, the Court finds it inappropriate to apply the Lanham Act extraterritorially in this case.  First, Dunabin's actions in the United Kingdom have no effect on United States commerce.  Second, Dunabin is not a citizen of the United States.  Lastly, applying the Lanham Act extraterritorially would conflict with United Kingdom law making issuance of an injunction inappropriate in light of international comity concerns.  Therefore, the Court dismisses Plaintiff's Complaint for lack of subject matter jurisdiction against Dunabin.

**2.      Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted.**

The Court grants Defendants' Motions to Dismiss Plaintiff's Complaint because Plaintiff fails to state a claim for direct infringement and contributory infringement.  (Dkt. Nos. 6, 8, 17, 46, 57.)  Plaintiff's direct infringement claim against Dunabin fails because Plaintiff does not plead facts establishing (1) trademark rights in the United States, and (2) effect on United States commerce.  Because contributory trademark infringement is predicated upon a finding of direct infringement, which this Court has found does not exist in this case, Plaintiff's contributory

infringement claims must also fail.  Moreover, the Court finds the Lanham Act's Safe Harbor Provision protects Defendant Registrars from liability.

### A.    Direct Trademark Infringement

#### i.    Plaintiff Fails to Plead Facts Establishing Trademark Rights in the United States.

Plaintiff fails to state a claim for direct infringement against Dunabin because he fails to assert valid trademark rights in the United States.  The Lanham Act protects against trademark, service mark, and trade name infringement even if the mark or name has not been federally registered.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1999).  If a mark is not registered, it is the plaintiff's burden to prove the mark deserves protection under the Lanham Act.  *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041 (D.C. Cir. 1989).  Common law determines who enjoys the exclusive right to use an unregistered trademark, the extent of such rights, and the proper geographical scope of any injunctive relief necessary to protect against the infringement of such rights.  *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003).  At common law, trademark ownership is acquired by actual use of the mark in commerce.  *Id.*  However, the owner of common law trademark rights in an unregistered mark is only entitled to injunctive relief in those localities in which it has established actual use of the mark.  *Id.* at 269.  This is to "ensure that a trademark does not precede its owner into markets that [the owner's] trade has never reached."  *Id.* (internal quotations omitted).

Plaintiff does not own a United States registration for the *Landcruise* mark.  Accordingly, to prove that his unregistered mark deserves protection under the Lanham Act, Plaintiff must first allege use in United States commerce.  Plaintiff fails to allege sufficient facts to assert that he operates his business or uses his mark in the United States, a critical element in a trademark

infringement claim.  To the extent that his business operates exclusively in Canada, there can be no confusion among American consumers because Dunabin's use of *Landcruise* is limited solely to the United Kingdom.

Plaintiff erroneously relies on his use of the *Landcruise* mark in Canada and his registration of *Landcruise.com* domain name to confer trademark rights in the United States. Plaintiff alleges such conduct gives him worldwide rights to the *Landcruise* mark, as well as exclusive rights over all second-level domain names and subdomain names, including Dunabin's *Landcruise.uk.com*.  However, operating a website available on the Internet is not equivalent to use in United States commerce.  *See Specht v. Google Inc.*, 758 F. Supp. 2d 570, 593 (N.D. Ill. 2010) (finding a website that merely advertises products and fails to offer consumers any information regarding pricing and sales does not constitute a bona fide use in commerce under the Lanham Act.).  "Courts have noted that anyone may register any unused domain name upon payment of a fee," but this registration in no way trumps federal trademark law.  *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 190 (D.D.C. 2005) (internal citations omitted).  Therefore, the mere registration of Plaintiff's *Landcruise.com* domain name is insufficient to confer trademark protection under the Lanham Act.

Moreover, Plaintiff's use of *Landcruise* in Canada does not create trademark rights in the United States.  In *Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco*, 329 F.3d 359, 384 (4th Cir. 2003), the Fourth Circuit noted that "[i]t has long been recognized that use of a foreign mark in a foreign country creates no trademark rights under United States law."  Similarly in *Person's Co. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990), the plaintiff relied on its use of the mark in Japan to support its claim for trademark rights in the United States.  The court held plaintiff did not have trademark rights in the United States

because the plaintiff's foreign use of the mark had no effect on United States commerce. *Id.* The court explained that "[t]he concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme." *Id.*

It follows that Plaintiff's use of *Landcruise* in Canada for over a decade does not create trademark rights in the United States because trademark rights exist independently in each country according to its own laws. Accordingly, Plaintiff may own valid rights over the *Landcruise* mark in Canada, and yet Dunabin may simultaneously own valid rights over the *Landcruise* mark in the United Kingdom. Because neither Plaintiff's registration of *Landcruise.com* nor his use of the *Landcruise* mark in Canada constitutes use in United States commerce, Plaintiff has no trademark rights in this country.

### ii.   Plaintiff Fails to Plead Facts Establishing Dunabin's Acts of Infringement Affect United States Commerce.

Taking the facts in the light most favorable to the Plaintiff and assuming he has sufficiently alleged valid trademark rights in the United States, his Complaint still fails to state a claim because he does not allege that Dunabin's acts of infringement affect United States commerce. As explained above, Dunabin's use of the *Landcruise* mark in the United Kingdom has no effect on United States commerce. Dunabin has never sold or advertised her services in the United States. Further, Plaintiff does not set forth any facts alleging that Dunabin's use of the *Landcruise* mark would create confusion with his mark in the minds of consumers in the United States. Rather, the harm Plaintiff is alleging is that he cannot expand into the United Kingdom. Such harm is not protected by the Lanham Act. *See Tire Eng'g & Distribution*, 682 F.3d at 310 ("[t]here is no United States interest in protecting [foreign] consumers.") Thus, even assuming Plaintiff has used the *Landcruise* mark in United States commerce, he fails to allege

harm to his trade reputation in United States commerce, as is required under the Lanham Act. Therefore, Plaintiff's Complaint fails to state a claim for direct infringement against Dunabin.

### B.      Contributory Trademark Infringement

Plaintiff fails to state a claim for contributory infringement against the remaining five Defendants, CentralNic, Network Solutions, VeriSign, ICANN, and ENOM, because contributory infringement cannot exist without the underlying direct infringement claims. Contributory infringement is a judicially created doctrine that derives from the common law of torts, under which liability may be imposed upon those who facilitate or encourage infringement. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012). For there to be liability for contributory trademark infringement, plaintiff must first establish the underlying direct infringement. *Id.* "In other words, there must necessarily have been an infringing use of the plaintiff's mark that was encouraged or facilitated by the defendant." *Id.*

Here, Plaintiff claims the remaining Defendants have each in various ways contributed to the infringement and violation of his trademark rights by use of the *Landcruise.uk.com* domain named owned by Dunabin. However, the remaining Defendants cannot be found liable for contributory infringement because contributory trademark infringement is predicated upon a finding of direct infringement, which this Court has found does not exist in this case. Therefore, Plaintiff fails to state a claim for contributory infringement against Defendants CentralNic, Network Solutions, VeriSign, ICANN, and eNom.

#### i. Plaintiff Fails to Plead Facts Establishing Defendants CentralNic, Network Solutions, VeriSign, ICANN, and eNom Have Used Plaintiff's Mark In Commerce.

Even assuming Plaintiff has a cognizable direct infringement claim against Dunabin, Plaintiff's contributory infringement claims still fail because Defendants CentralNic, Network

Solutions, VeriSign, ICANN, and eNom did not use Plaintiff's mark in commerce.  In the United States, trademark ownership is acquired by actual use of the mark in commerce.  *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003).  As this Court explained in *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 854 (E.D. Va. 2000), "[f]or domain name disputes based on federal or common law trademark infringement or dilution, the relevant tortious act is the *use* of the domain name, and not the act of registration."  Consequently, because registrars do not "use" marks in commerce, they are not subject to liability.  *See Bird v. Parsons*, 289 F.3d 865, 879 (6th Cir. 2002).  In *Bird*, the Sixth Circuit explained that the defendant registrar was "not using the [registered trademark] in connection with the sale, distribution or advertising of goods and services," but rather, merely using domain names to designate host computers on the Internet.  *Id.* at 878 (internal citations omitted).  The court found that registration of a domain name was a purely nominative function and was not prohibited by trademark law.  *Id.*

Similarly here, Defendants CentralNic, Network Solutions, VeriSign, ICANN, and eNom, are each considered a "domain name registration authority" for purposes of the Lanham Act.  Like the defendants in *America Online* and *Bird*, Defendants here do not "use" the *Landcruise* mark merely by registering and maintaining the domain names.  Therefore, Plaintiff fails to state a claim because Defendants CentralNic, Network Solutions, VeriSign, ICANN, and eNom have not used the Plaintiff's mark in commerce.

### ii. Safe Harbor Provisions Of The Lanham Act

Nevertheless, Plaintiff fails to state a claim against Defendants CentralNic, Network Solutions, VeriSign, ICANN, and eNom because the Lanham Act's Safe Harbor Provisions

protect Domain Name Registrars, Domain Name Registries, and other domain name registration

authorities from liability.  15 U.S.C. § 1114(2)(D).  The Lanham Act states:

> A domain name registrar, a domain name registry, or other domain name
> registration authority that takes any action described under clause (ii)
> affecting a domain name shall not be liable for monetary relief or, except
> as provided in subclause (II), for injunctive relief, to any person for such
> action, regardless of whether the domain name is finally determined to
> infringe or dilute the mark.

*Id.*  A domain name registration authority is only liable if there is a "showing of bad faith intent

to profit from such registration or maintenance of the domain name."   15 U.S.C. §

1114(2)(D)(iii).  As the Fourth Circuit explained:

> In creating these causes of action, Congress intended expressly to limit the
> liability of domain name registrars under the Act as long as the domain
> name registrars comply with the conditions stated in § 1114(2)(D)(i). . . .
> Without such limitation of liability, all registrars would potentially have
> been exposed to the offense of cybersquatting because they register and
> traffic in domain names that could be infringing or diluting trademarks
> protected by the Lanham Act.

*Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 384 (4th Cir. 2003).

Here, Plaintiff asserts Defendants CentralNic, Network Solutions, VeriSign,

ICANN, and eNom have individually contributed to the infringement and violation of his

trademark rights by registering and maintaining Dunabin's domain name,

*Landmark.uk.com*.  These Defendants are all considered a "domain name registration

authority" for purposes of the Lanham Act.[1]  Because Plaintiff does not allege facts that

Defendants acted with bad faith intent to profit from the registration of Dunabin's

*Landcruise.uk.com* domain name, Defendants are all shielded from liability under the

Lanham Act's Safe Harbor Provision.

---

[1] A detailed explanation of each Defendant's role as a registration authority is outlined in Part I, *supra*.

### 3.     Supplemental Jurisdiction

Lastly, because the Court has dismissed all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c) provides that a district court may decline to exercise discretion over a state law claim after dismissing all claims over which it has original jurisdiction.  *See also Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995).  In deciding whether to exercise supplemental jurisdiction, a federal court should consider "the values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (internal citations omitted).  "When the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court should decline the exercise of jurisdiction by dismissing the case . . . ."  *Id.* (emphasis added).

Here, upon consideration of the *Cohill* factors, the Court declines to exercise jurisdiction over Plaintiff's state law claims of trademark infringement and dilution.   The Court has dismissed all of Plaintiff's claims arising from its alleged jurisdiction under the Lanham Act. Further, the parties have not engaged in discovery and would not be burdened if jurisdiction is not retained.   For these reasons, the Court declines to exercise supplemental jurisdiction.  The Court declines to opine on the viability of Plaintiff's claims arising under Virginia or any other state's law.

### IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction because the Lanham Act cannot be applied extraterritorially in this case.  (Dkt. Nos. 6, 8, 17, 46, 57.)  Further, the Court **GRANTS**

Defendants' Motions to Dismiss Plaintiff's Complaint for failure to state a claim because Plaintiff fails to plead facts that plausibly establish he has recognized trademark rights in the United States that can be infringed, either directly or contributorily.  (Dkt. Nos. 6, 8, 17, 46, 57.) Lastly, because the Court has dismissed all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.   For these reasons, Plaintiff's Complaint is **DISMISSED** with prejudice as to all Defendants.   Accordingly, Plaintiff's Motion for Summary Judgment (Dkt. No. 72) is **DENIED** as moot.

     **IT IS SO ORDERED**.

     ENTERED this _29th_ day of March, 2013.


Alexandria, Virginia
3 / 29 / 2013

                                 /s/
                             Gerald Bruce Lee
                             United States District Judge